UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                               :

DUANE ROE, BURLINGHAM WOODS, LLC,    :
FREEMAN PROPERTIES, INC., and           :
REINHARDT FARMS LLC,                :
                                               :
               Plaintiffs,      :        15-cv-6682 (KBF)
                                               :
              -v-                 :        OPINION & ORDER
                                                 :
TOWN OF MAMAKATING, TOWN OF       :
MAMAKATING TOWN BOARD, TOWN OF   :
MAMAKATING PLANNING BOARD, STOSH   :
ZAMONSKY, MORT STAROBIN, and WILLIAM  :
HERRMANN,                                  :
                                               :
               Defendants.      :
                                               :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 9, 2016

KATHERINE B. FORREST, District Judge:

      Plaintiff Duane Roe, a property developer in the Town of Mamakating (the

"Town") commenced this action in August 2015 against the Town, its town board

(the "Town Board") and planning board (the "Town Planning Board"), and three

members of those boards, seeking damages and injunctive relief arising from, inter

alia, defendants' alleged conspiracy to impede three of Roe's land use development

projects.  (Compl., ECF No. 4.)[1]  Plaintiffs' initial (and still operative) complaint

alleges claims for violation of their substantive due process rights under the

Fourteenth Amendment and the New York State Constitution.

---

[1] The three projects at issue in plaintiffs' initial complaint are the Burlingham Woods Subdivision ("Burlingham Woods"), the Freeman Properties Subdivision ("Freeman Properties"), and the Reinhardt Farms Subdivision ("Reinhardt Farms").  The complaint also names as plaintiffs three corresponding entities that Roe owns or controls: Burlingham Woods, LLC; Freeman Properties, Inc.; and Reinhardt Farms LLC.

Pending before the Court are defendants' motion to dismiss the complaint (ECF No. 29), and plaintiffs' cross-motion to file an amended complaint (ECF No. 35). In their proposed First Amended Complaint ("FAC"), plaintiffs seek to add, inter alia, allegations bolstering their previously asserted claims, claims relating to a fourth development project, the Pantelop Road Subdivision ("Pantelop Road"), two individual board members as defendants, and equal protection claims arising under the Fourteenth Amendment and the New York State Constitution. (First Am. Compl. ("FAC"), ECF No. 38-6; see also Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss and in Support of Pls.' Cross-Mot. for Leave to Amend at 25, ECF No. 36.)

Defendants raise several arguments in their motion to dismiss, including, inter alia, that: (1) plaintiffs' claims are not yet ripe for review, (2) none of plaintiffs' federal due process claims allege a protectable property interest or any conscience-shocking behavior, (3) plaintiffs do not state a plausible "class of one" equal protection claim, (4) plaintiffs' claims against the individual officials are duplicative of those alleged against the Town and the officials are otherwise entitled to qualified immunity, and (5) plaintiffs may not assert their state law claims because federal law provides an alternative remedy. Plaintiffs argue that each of their claims, as revised and supplemented in the FAC, are ripe and sufficiently plausible to withstand defendants' motion.

For the reasons set forth below, the Court concludes that, even when one considers the more robust allegations included in plaintiffs' FAC, plaintiffs' claims are not yet ripe for review. The Town has not yet reached a final decision with

regard to plaintiffs' requests relating to any of their four projects, and plaintiffs have not met their burden to show that the history of the projects and defendants' alleged hostility to Roe and plaintiffs' proposals warrant application of the futility exception at this juncture.  Defendants' motion to dismiss is therefore GRANTED, and plaintiffs' cross-motion for leave to file an amended complaint is DENIED. Accordingly, this action is dismissed without prejudice.

I.    BACKGROUND

    A.    <u>Procedural History</u>

Plaintiffs commenced this action in August 2015 by filing a complaint against the Town of Mamakating, its Town Board and Planning Board, and three members of those boards.  (ECF No. 4.)[2]  The initial complaint—which sets forth one cause of action for each development project—alleges claims for substantive due process under the Fourteenth Amendment and the New York State Constitution.[3]  The action was assigned from the outset to the undersigned as related to another action that was then before this Court and subsequently dismissed at the pleading stage. See <u>Town of Mamakating v. Lamm</u> ("<u>Lamm</u>"), No. 15-cv-2865 (KBF) (S.D.N.Y.).

After the Court granted a number of extension requests to allow the parties an opportunity to engage in (ultimately unsuccessful) settlement discussions (ECF

---

[2] Plaintiffs dropped the Town Board and the Town Planning Board as defendants in the FAC because neither is a suable entity.

[3] Although the initial complaint (and the FAC) also contain allegations that arguably suggest a First Amendment retaliation claim (<u>see</u> Mem. of Law in Support of Defs.' Mot. to Dismiss at 9-10, ECF No. 31), plaintiffs have expressly disclaimed any intention to assert such a claim in either complaint (Pls.' Reply Mem. of Law in Support of Mot. to Amend at 1, ECF No. 43).  Plaintiffs have also expressly disavowed any intention to assert any procedural due process claims.  (<u>Id.</u> at 5 n.6.)  The Court therefore need not further discuss any potential First Amendment retaliation or procedural due process claims that could be construed from plaintiffs' allegations.

Nos. 21, 24, 26), on January 15, 2016, defendants moved to dismiss the complaint

pursuant to Rule 12(b)(6) on several grounds that the Court has set forth above

(ECF No. 29).  On February 29, 2016, plaintiffs opposed the motion and cross-moved

for leave to file the proposed First Amended Complaint, adding, as stated above,

two new individual defendants, claims relating to a fourth development project, and

equal protection claims arising under the Fourteenth Amendment and the New

York State Constitution.  (ECF Nos. 35, 36.)  The FAC seeks, inter alia, a

declaration that plaintiffs' rights have been violated, injunctive relief,

compensatory, consequential and punitive damages, and attorneys' fees and costs.

On March 1, 2016, the Court held a telephonic status conference with the

parties in which the Court set a schedule for the remainder of the briefing in

relation to both parties' motions.  The Court explained that, in light of the identical

standards governing motions to dismiss and motions to file amended pleadings, the

Court would—for efficiency purposes—look to the allegations in the FAC, rather

than the still operative initial complaint, in its factual recitation in any written

decision addressing the pending motions.  (See ECF No. 41.)  In accordance with the

schedule set forth in the March 1, 2016 Order, defendants filed their reply brief in

support of their motion to dismiss and opposition to plaintiffs' cross-motion to

amend on April 1, 2016.  (ECF No. 42.)  On April 14, 2016, plaintiffs filed their reply

brief in support of their cross-motion to amend.  (ECF No. 43.)  On April 22, 2016,

defendants filed their sur-reply brief in further support of their motion to dismiss

and in opposition to plaintiffs' motion to amend.  (ECF No. 45.)

B.    Factual Allegations[4]

1.    Parties

Plaintiff Duane Roe is an individual residing in the Town of Mamakating, a municipality located in Sullivan County, New York.  (FAC ¶¶ 1, 7.)  Roe is the sole shareholder and officer of plaintiff Freeman Properties, Inc., a New York corporation, the sole member of plaintiff Reinhardt Farms, LLC, a New York limited liability company, and a member with 50% ownership of plaintiff Burlingham Woods, LLC, a New York limited liability company.  (FAC ¶¶ 2-6.)

Defendant William Herrmann has, during the events giving rise to this dispute, been the Town Supervisor and a member of the Town Board, the duly elected legislative body of the Town.  (FAC ¶ 8.)  At certain times during the relevant period, defendant Mort Starobin was a member and chairman of the Town Planning Board, a municipal agency vested with the power to: (1) issue findings statements and negative declarations for purposes of the State Environmental Quality Review Act ("SEQRA"), (2) issue special use permits and site plan approvals pursuant to the Town's zoning code and New York's Town Law, and (3) issue conditional and final subdivision approvals pursuant to the Town's zoning code and New York's Town Law.  (FAC ¶ 9.)  During periods relevant to this suit, defendant Stosh Zamonski was a member and chairman of the Town Planning Board,

---

[4] The Court here recounts only those allegations necessary to resolve the parties' pending motions. As stated above, for the sake of judicial efficiency and as previously explained to the parties, the below recitation of plaintiffs' factual allegations is drawn from the FAC, rather than from plaintiffs' still operative initial complaint.

defendant Janet Lybolt was a member of the Town Planning Board, and defendant

Matt Taylor was a member of the Town Board.  (FAC ¶¶ 10-12.)

              2.      <u>Plaintiffs' Land Use Projects and Defendants' Alleged Conduct</u>

The FAC alleges that, based on their political animus against Roe, the

individual defendant members of the Town Board and the Town Planning Board

entered into a conspiracy to stop and impede the four development projects that are

the subject of this action.  (FAC ¶¶ 20, 29.)  The allegations supporting the alleged

conspiracy are vague and, where not conclusory, are at best only indirectly

suggestive of the existence of animus against Roe.  The FAC alleges that the

defendants held clandestine meetings amongst themselves and with Town

consultants in the winter and spring of 2015, at which they discussed methods to

stop Roe's projects.  (FAC ¶¶ 21-24.)  The FAC further alleges that the individual

defendants caused Town consultants to submit inordinately high bills charged to

Roe and gave improper orders to Town employees in relation to these projects,

including directing the Building Inspector to halt one of Roe's projects.  (FAC ¶¶ 25,

28.)  The FAC alleges that the Town Planning Board's assistant clerk, Nicole

Peleschuck, was instructed to spend the bulk of her time gathering and reviewing

Roe's documents instead of assisting with billing, the public purpose given for her

hiring.  (FAC ¶ 23.)  The FAC alleges that the defendants took these actions

because of a general dissatisfaction with Roe's association with Hasidic Jews who

had moved into the Town and nearby communities.  (FAC ¶ 27.)

Plaintiffs allege that defendants' delay and obstruction of their development

projects constitutes conscience-shocking behavior engaged in with the intention to

6

deprive plaintiffs of vested rights and due process of law.  (FAC ¶ 30; see also FAC ¶¶ 91-92, 127, 202, 231, 233.)[5]  Plaintiffs allege that defendants have knowingly and intentionally treated them differently from everyone else based on irrational, wholly arbitrary, and improper politically-motivated reasons.  (FAC ¶¶ 31-32; see also FAC ¶¶ 94, 129, 205, 235.)  Below, the Court describes the history and present status of each of the four development projects at issue in this case, focusing on the facts relevant to this Court's resolution of the pending motions.

a)   Burlingham Woods

Burlingham Woods began as a 2-lot subdivision located on approximately 41 acres in the Town.  (FAC ¶ 33.)  On January 11, 2011, Roe's surveyor presented the subdivision to the Town Planning Board and explained that the 2-lot subdivision would include one lot of approximately 8.4 acres and another lot of approximately 32.7 acres.  (FAC ¶ 36.)  On February 22, 2011, the Town Planning Board held a hearing on the proposal, after which it voted a SEQRA Negative Declaration and voted to approve the subdivision.  (FAC ¶ 37.)  In March 2011 and February 2012, Roe requested that the Town Board add further uses to the zoning district where the property is located; in or about 2012, the Town Board approved Roe's original

---

[5] Plaintiffs also allege that defendants' alleged animus against Roe is demonstrated by the fact of the Lamm action that the Town (and the Village of Bloomingburg) commenced in this Court in April 2015, in which the Town and the Village alleged various claims against Roe and a number of other individuals and entities.  (FAC ¶ 18.)  In that action, which this Court dismissed in September 2015 pursuant to Rule 12(b)(6), Town of Mamakating, N.Y. v. Lamm, No. 15-cv-2865 (KBF), 2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015), the Town and the Village alleged that Roe participated in a racketeering conspiracy involving fraud, bribery, intimidation, voter fraud and corrupt influence of public officials and government institutions for the purpose of taking control of local institutions and erecting a high density residential development project (see FAC ¶ 19).  The Court's dismissal of the Lamm action was affirmed by the Second Circuit by summary order on June 8, 2016.  Town of Mamakating v. Lamm, No. 15-3182-CV, 2016 WL 3188862 (2d Cir. June 8, 2016) (summary order).

request to rezone the district for retail usage (that request contemplated that the site would include a gas station and convenience store). (FAC ¶¶ 38, 40, 41, 43.)

On January 28, 2014, Roe's engineer presented a proposal to the Town Planning Board to further subdivide 3.9 acres from the 8.4 acre parcel to construct a gas station and convenience store of approximately 2,000 square feet. (FAC ¶ 46.) The Town Planning Board held a public hearing for Roe's proposal at its May 27, 2014 meeting, at which the Town Planning Board requested that Roe prepare an archaeological study, accident reports, and a long-form Environmental Assessment Form ("EAF"). (FAC ¶¶ 48, 49.) Over the succeeding months, Roe submitted a long-form EAF, revised architectural plans, and accident reports to the Planning Board, as well as an approval letter from the Sullivan County Department of Public Works, and a Stormwater Pollution Prevention Plan accepted by the Town's engineer; Roe also submitted an archaeological study to the New York State Office of Parks, Recreation and Historic Preservation, which that office approved in August 2014. (FAC ¶¶ 50-54, 62-63.)

During a site visit on August 5, 2014, defendant Starobin told Roe that Roe had placed the Town Planning Board "in a terrible position" by associating with Shalom Lamm and that the "politics" of the situation required the Town Planning Board to be particularly cautious in reviewing any projects proposed by Roe. (FAC ¶ 56.) At the site visit, Starobin and Zamonski suggested that Roe drop the request for the second lot (for which no usage plan had been submitted) and Roe agreed. (FAC ¶ 58.) Roe also agreed to make a number of other changes to the development

8

plan during the site visit.  (FAC ¶¶ 59-61.)  On October 28, 2014, the Planning Board voted to close the public hearing.  (FAC ¶ 66.)  On November 25, 2014, the Planning Board reached a tie vote on the SEQRA Negative Declaration, so the vote did not carry.  (FAC ¶ 67.)  Plaintiffs allege that defendant Zamonski voted against the Negative Declaration "based upon the [proposal's] encroachment into the stream buffer," despite the fact that Roe cooperated in addressing Zamonski's requests at the August 2014 site visit.  (FAC ¶ 67.)

In December 2014, Roe's engineer responded to the adverse SEQRA votes with an alternative project proposal; the Town Planning Board's engineer requested that the proposal be altered to conform with the Town's Design Guidelines, even though those guidelines did not mandatorily apply to the zoning district in which Burlingham Woods is located.  (FAC ¶¶ 68-74.)[6]  Roe submitted revised renderings to the Town Planning Board in March 2015, as well as letters from the Sullivan County Department of Public Works and the New York State Department of Health approving the revisions.  (FAC ¶¶ 76-78.)

After the March 2015 submission, the Town Planning Board's secretary advised Roe that he had to contribute additional funds to the Town Planning Board's escrow account.  (FAC ¶ 79.)  By that time, plaintiffs had already given approximately $15,000 to the Town Planning Board in fees and consultant charges.  (FAC ¶ 79.)  Initially, Roe refused to pay.  (FAC ¶ 80.)  In November 2015, plaintiffs' attorney was advised that the project was not moving forward because plaintiffs

---

[6] Plaintiffs allege that the Town Planning Board approved a project similar to Burlingham Woods in Wurtsboro in April 2014.  (FAC ¶ 75.)

owed the Planning Board $942 in consultant fees.  (FAC ¶ 81.)  In December 2015, Roe tendered a check in the amount of $974.76 after receiving confirmation that that was in fact the amount due.  (FAC ¶ 82.)  Soon thereafter, Roe's attorney was advised that another sum of $3,750 had to be paid before the project could be considered, which plaintiffs have not alleged that they have paid.  (FAC ¶ 83.)  The project has since not moved forward based on Roe's failure to tender the additional sum of $3,750.  Plaintiffs allege that this latest request for more escrow money is merely a continuation of the Town Planning Board's bad faith delay tactics for which there is no legitimate basis.  (FAC ¶¶ 84-85.)  Plaintiffs allege that they already incurred substantial costs and expenses in connection with Burlingham Woods, including engineering and surveying costs in the amount of $46,500 and municipal fees in the amount of $15,000.  (FAC ¶ 87.)

> b)   Freeman Properties

Freeman Properties is a 10-lot subdivision located on approximately 43 acres in the Town.  (FAC ¶ 99.)  The Town Planning Board granted conditional final approval for the subdivision in November 2008, with those conditions being fulfilled over the succeeding months.  (FAC ¶¶ 101-08.)  In October 2013, Roe's engineer prepared a bond estimate for the public improvements contemplated in the project in the amount of $184,300; the Town Board approved the proposed bond, to be secured by a letter of credit, in December 2013.  (FAC ¶¶ 109-14.)[7]  The FAC alleges that Roe made "numerous inquiries" between December 2013 and May 2014

---

[7] The Town Board's engineer informed plaintiffs by letter that a bond would be necessary to allow plaintiffs to file the approved project map with the County Clerk's Office; it serves as a performance guarantee to insure completion of all proposed public improvements.  (FAC ¶¶ 110-11.)

regarding the status of the actual bond, which is traditionally drafted and approved by the Town Board's attorney.  (FAC ¶ 115.)  Specifically, the FAC alleges that Roe met with defendant Hermann in February or March 2014, at which time Hermann stated that he would look into the status of the posting of the bond.  (FAC ¶ 116.) The FAC further alleges that in May 2014 Roe wrote to the Town Planning Board's secretary, Linda Franck, inquiring as to the status of the bond, who informed him that his previous requests had been forwarded to the Town Board and its attorneys. (FAC ¶ 117.)  As currently pled, the FAC does not allege whether Roe made any additional efforts to inquire into the status of the bond subsequent to May 2014 or that he has sought any other means by which to secure the bond other than the inquiries expressly stated in the FAC.

Plaintiffs further allege, on information and belief, that defendant Hermann stated to at least one Town Board member that he would not allow Roe's project to be placed on the Town Board's agenda.  (FAC ¶ 118.)  The FAC is, however, devoid of any allegation that Hermann has sole authority to determine what items are placed on the Town Board's agenda, and it does not explain whether resolution of the bond issue even requires that Freeman Properties to be placed on that agenda.

Plaintiffs allege that they cannot complete the necessary work on Freeman Properties until the Town provides Roe with the instrument to be utilized for the performance guarantee or specifies the type of instrument required and signs the subdivision map, a task that the Town has not fulfilled.  (FAC ¶¶ 121-22.)  Plaintiffs allege that there has been no other instance of a developer in the Town who, after

receiving final subdivision approval, was delayed by Town officials refusing to provide the developer with an agreement to allow him to post a bond. (FAC ¶ 121.) Plaintiffs also allege that the Town has not indicated, despite Roe's attorney's inquiry, whether the posting of a bond or letter of credit will actually cause Freeman Properties to be completed. (FAC ¶ 123.) Plaintiffs allege that, to date, they have incurred substantial costs and expenses in connection with Freeman Properties in excess of $200,000. (FAC ¶ 120.)

          c)    Reinhardt Farms

Reinhardt Farms is a 27-lot subdivision located on approximately 50 acres in the Town. (FAC ¶¶ 134, 136.) A portion of the property has been used and operated as a mine for over a decade, and Roe initiated the process of applying for a more extensive mining operation covering 12 acres on the property in 2004. (FAC ¶¶ 137, 139.) The New York State Department of Environmental Conservation ("DEC") issued Roe a mining permit in July 2005, and in October 2005 the Town Planning Board stated that the mining operation could proceed without any effect on Roe's proposed subdivision. (FAC ¶¶ 143-44.)

In December 2008, a sketch plan of a revised subdivision was presented to the Town Planning Board, and in July 2009 Roe's surveyor advised the Town Planning Board that Reinhardt Farms would be accomplished in two phases, with the first phase being comprised of 16 lots that were not affected by reclamation of the mining operations on the property, and the second phase consisting of 11 lots that would have to await final action from the DEC. (FAC ¶¶ 145, 147.) The Town Planning Board held a public hearing on the project in August 2009, and

12

subsequently issued a SEQRA Negative Declaration for the entire subdivision in September 2009. (FAC ¶¶ 148-49.) The Town Planning Board granted preliminary approval to phase I of the proposal in October 2009, and granted conditional final approval for a total of 17 lots for phase I in March 2010, with the remaining conditions being that the Town's engineer and the Town's attorney review the plan and that the bonding issues associated with the project be resolved. (FAC ¶¶ 150-51.)

The DEC renewed Roe's mining permit in August 2010; Roe continued operating the mine thereafter. (FAC ¶¶ 153-54.) In June 2013, Roe's engineer sent the DEC a written application to modify the mining permit. (FAC ¶ 155.) Following negotiations over several months, Roe and the DEC entered into a Consent Order in May 2014 to allow for the expedited approval of the change from a mine to a residential subdivision in exchange for Roe performing final reclamation of the site. (FAC ¶¶ 158-62.)

Plaintiffs allege that, on information and belief, the Town Planning Board's engineer approved the road bonding estimate for the project in the latter part of 2013. (FAC ¶ 156.) In May 2014, plaintiffs sent the new Town Planning Board engineer a letter indicating that the total bond for the project was $1,123,700, and that Roe was prepared to file a bond in that amount and thereupon file phase I of the subdivision map. (FAC ¶¶ 163-65.)

After Roe had made several submissions to show compliance with the Consent Order, on March 16, 2015, the DEC issued Roe a Notice of Violation setting

forth various observations made during an inspection of reclamation efforts at the site.  (FAC ¶ 173; see also FAC ¶¶ 166-72.)  That same day, March 16, 2015, counsel for the Town and the Town Planning Board sent a letter to the DEC regarding the proposed mine expansion, which stated—for the first time—that neither the original mining operation nor the proposed expansion was permitted by the Town's Zoning Code, and also stated that the March 2010 conditional final approval for the residential subdivision had lapsed because Roe had not requested an extension.  (FAC ¶¶ 174-77.)  Plaintiffs allege, upon information and belief, that the Town Planning Board has never otherwise deemed a conditional final approval to have expired because of a failure to request an extension.  (FAC ¶ 178.)

In April 2015, the DEC advised Roe that his modification plan was incomplete and alleged several violations associated with the mine.  (FAC ¶¶ 182-88.)  On June 19, 2015, the Town issued a Notice of Violation to Reinhardt Farms alleging that mining was prohibited in the zoning district and directing Reinhardt Farms to stop all mining operations and related work except that which was necessary to remedy violations or comply with the reclamation plan.  (FAC ¶¶ 189-92.)  The Town Board has since rezoned the subject area to require larger minimum lot sizes which would destroy the approved subdivision if the Town Board is allowed to retract its prior approvals of the plan.  (FAC ¶ 193.)  Plaintiffs allege that they cannot secure final approval and complete the necessary reclamation work at Reinhardt Farms until the Town ceases its efforts to retract its prior approvals.

(FAC ¶¶ 197, 203-04.)  Plaintiffs allege that they have incurred substantial costs in connection with Reinhardt Farms of approximately $300,000.  (FAC ¶ 195.)

d)   Pantelop Road

Pantelop Road is a 12-lot subdivision involving 3 parcels in the Town that totals approximately 30 acres.  (FAC ¶¶ 212-13.)  After extensive revisions had been made to Roe's proposed subdivision in response to the Town Planning Board's concerns, on April 23, 2013, the Town Planning Board, after a public hearing, voted a SEQRA Negative Declaration and then for preliminary approval of the project. (FAC ¶¶ 215-16.)  On August 27, 2013, the Town Planning Board granted conditional final approval to the subdivision, with the conditions being finalization of drainage easements and meeting the Town engineer's comments.  (FAC ¶ 217.) On January 28, 2014, the subdivision was withdrawn from the Town Planning Board's consideration because plaintiffs were to appear before the Town Board for consideration of a proposed drainage district associated with the project.  (FAC ¶ 218.)[8]

In July 2014, Roe's engineer submitted a report regarding the proposed drainage district to the Town Board, and completed another report in December 2015 that addressed the Town Board's engineer's verbal comments on the initial proposal.  (FAC ¶¶ 220, 222-23.)  On January 4, 2016, Roe's attorney mailed the December 2015 report to defendant Hermann, but did not receive a response as of the date of plaintiffs' submission of the FAC.  (FAC ¶¶ 224-25.)  Plaintiffs allege

---

[8] The purpose of the drainage district is to allow the Town to set up a taxing structure if the project owner fails to properly maintain storm water management.  (FAC ¶ 221.)

that they cannot compete the necessary remaining work on the project until the Town establishes the drainage district and signs the subdivision map.  (FAC ¶¶ 228-29, 234.)  Plaintiffs have incurred substantial costs in connection with Pantelop Road in excess of $125,000.  (FAC ¶¶ 227.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  Id.  If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555-57). If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." Id. (internal quotation marks omitted).

Where necessary, the Court may supplement the allegations in the complaint with facts from documents either referenced in the complaint or relied upon in framing the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

17

To the extent that a defendant seeks to dismiss a claim or an action on the ground that the Court lacks the authority to adjudicate it, this Court "must accept as true all material factual allegations in the complaint, but . . . not draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court may also "consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.

B.   Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a complaint need not be granted when amendment would be futile. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015). Futility turns on whether an amended pleading could withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ricciuti v. New York City Transit Auth., 941 F .2d 119, 123 (2d Cir. 1991).

C.   Ripeness

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'" Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008). "To be justiciable, a cause of action must be ripe—it must present a real, substantial controversy, not a mere hypothetical question." Kurtz v. Verizon New York, Inc., 758 F.3d 506, 511 (2d Cir. 2014). "A claim is not ripe if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all." Id. Because ripeness raises a

jurisdictional question, it is appropriate to address an argument that a claim is not ripe for review before turning to other, merit-based grounds for dismissal.  In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck, No. 14-cv-7228 (CS), 2016 WL 1181727, at *11 (S.D.N.Y. Mar. 25, 2016); see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). A court must presume that it cannot entertain plaintiffs' claims "'unless the contrary appears affirmatively from the record.'"  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (quoting Renne v. Geary, 501 U.S. 312, 316 (1991)).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

"[T]he Supreme Court has developed specific ripeness requirements applicable to land use disputes."  Murphy, 402 F.3d at 347; Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d 574, 597 (S.D.N.Y. 2013). That precedent holds that land use challenges are generally not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985).  "A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'"  R-Goshen LLC v. Vill. of Goshen, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003), aff'd sub nom. R-Goshen LLC v. Andrews, 115 F. App'x 465 (2d Cir. 2004) (summary order) (quoting Williamson, 473 U.S. at 193); see also

S&R Dev. Estates, LLC v. Bass, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) ("A final decision exists when a development plan has been submitted, considered and rejected by the governmental entity with the power to implement zoning regulations.").  Four considerations undergird the final decision rule: (1) requiring a final decision from the local authority aids in the development of a full record, (2) it allows a court to know precisely how a regulation will be applied to a particular parcel, (3) the claimant might be able to obtain the sought relief without requiring judicial entanglement, and (4) requiring a meaningful application by the claimant respects principles of federalism.  Murphy, 402 F.3d at 348.

Notwithstanding the foregoing, "the finality requirement is not mechanically applied."  Murphy, 402 F.3d at 349.  A property owner may be "excused from obtaining a final decision" if doing so "would be futile," such as, for example, if the zoning agency "has dug in its heels and made clear that all such applications will be denied."  Id.; see also Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1014 n.3 (1992) (stating that application for a variance not required when it would be "pointless").  "District courts 'have found that in order to invoke the futility exception, a plaintiff must demonstrate: (1) the inevitability of refusal of their application, taking into consideration factors such as the defendants' hostility, delay and obstruction; and (2) that plaintiff has filed at least one meaningful application.'"  Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y., 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015) (quoting Quich Cash of Westchester Ave. LLC v. Vill. of Port Chester, No. 11-CV-5608 (CS), 2013 WL 135216, at *8 (S.D.N.Y. 2013)).  "Futility

does not exist merely because public officials are hostile to the proposal at issue."
Id.; accord S&R Development Estates, 588 F. Supp. 2d at 463.  Similarly,
"[g]overnment authorities . . . may not burden property by imposition of repetitive
or unfair land-use procedures in order to avoid a final decision."  Palazzolo v. Rhode
Island, 533 U.S. 606, 621 (2001); see also Sherman v. Town of Chester, 752 F.3d
554, 561 (2d Cir. 2014) (identifying "unfair/repetitive procedures" as a second
exception distinct from futility but for which the analysis is the same where the
plaintiff argues that seeking a final decision would be futile because the defendant
used and likely will continue to use "repetitive and unfair procedures in order to
avoid a final decision").

Although originally applied in the context of a takings claim, the Second
Circuit has applied Williamson and its progeny to other land use challenges,
including claims alleging equal protection and due process violations.  Lost Trail
LLC v. Town of Weston, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order);
Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88-89 (2d
Cir. 2002); see also Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 123
(2d Cir. 2014) ("We think . . . that a plaintiff alleging discrimination in the context
of a land-use dispute is subject to the final-decision requirement unless he can show
that he suffered some injury independent of the challenged land-use decision.");
Murphy, 402 F.3d at 349-50 (citing decisions from other circuits).  Courts have also
applied the final decision requirement to land use challenges arising under New
York law.  Congregation Rabbinical Coll., 915 F. Supp. 2d at 598 (collecting cases).

21

III.   DISCUSSION

In addition to raising several merit-based grounds for dismissal, defendants' motion to dismiss contends that this Court lacks subject matter jurisdiction over plaintiffs' claims because those claims are not yet ripe for review.  Defendants argue that neither the Town Planning Board nor the Town Board have issued a final decision as to any of plaintiffs' land use applications and plaintiffs have not adequately demonstrated that any of their application will inevitably be refused. All of plaintiffs' claims, including all due process and equal protection claims arising under federal and state law, are subject to the same ripeness inquiry, and therefore the Court considers all claims together for purposes of this analysis.

At the outset, plaintiffs do not dispute that the Town Planning Board has not issued a final adverse decision as to any of the four development projects that are the subject of this action.  (See Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss and in Support of Pls.' Cross-Mot. for Leave to Amend at 8-9, 15-16, 21; Pls.' Reply Mem. of Law in Support of Mot. for Leave to Amend at 2-3, ECF No. 43.)[9]  Thus, the sole question for purposes of the Court's jurisdictional inquiry is whether plaintiffs'

---

[9] Defendants' motion does not directly argue that plaintiffs' claims relating to Freeman Properties are unripe, instead challenging such claims solely on the merits.  (See Mem. of Law in Support of Defs.' Mot. to Dismiss at 10-13, 17-18.)  Plaintiffs' initial opposition brief does acknowledge, however, that no final adverse decision has been reached as to Freeman Properties.  (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss and in Support of Pls.' Cross-Mot. for Leave to Amend at 15-16.) Because "Article III ripeness is a constitutionally mandated jurisdictional prerequisite, . . . its absence must be noted by a court sua sponte."  Simmonds v. I.N.S., 326 F.3d 351, 358 n.8 (2d Cir. 2003); see also Entergy Nuclear Vermont Yankee, LLC v. Shumlin, 733 F.3d 393, 429 (2d Cir. 2013) ("'[T]he question of ripeness may be considered on a court's own motion.'" (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003))).  Therefore, the Court addresses whether the claims relating to Freeman Properties are ripe for review notwithstanding the fact that the parties have not specifically focused on the ripeness of that project in their briefing.

allegations are sufficient to show that waiting to obtain a final decision from the Town Planning Board (or, where applicable, from the Town Board) would be futile.

Before discussing the adequacy of plaintiffs' showing, the Court reiterates that it is plaintiffs who must affirmatively prove the existence of subject matter jurisdiction, and it is therefore plaintiffs who bear the burden of demonstrating ripeness and, in this case, futility. Murphy, 402 F.3d at 347; Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc., 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013). In order to show futility, plaintiffs must show the inevitability of defendants' refusal of their applications, and that they have filed at least one meaningful application. Bloomingburg, 111 F. Supp. 3d at 479. The standard for futility is a high one; the doctrine only applies "when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical." Sherman, 752 F.3d at 563; see also Dix v. City of New York, No. 01 CIV. 6186 (LAP), 2002 WL 31175251, at *6-7 (S.D.N.Y. Sept. 30, 2002) (describing futility exception as a "narrow" one). A rejected meaningful application alone may not be sufficient to invoke the futility exception. Goldfine v. Kelly, 80 F. Supp. 2d 153, 160 (S.D.N.Y. 2000). With these principles in mind, the Court explains why plaintiffs have not shown futility as to any of the four development projects at issue in this case. Of course, this conclusion does not foreclose plaintiffs from bringing a new action at a later time if the defendants render a final decision or if the alleged hostile and obstructive behavior persists with respect to any of plaintiffs' development projects.

In attempting to show that further compliance with defendants' requests would inevitably be followed by rejection, plaintiffs' argument primarily relies on generalized allegations and affidavits and other statements that the individual defendants began to harbor animus against Roe personally in late 2014.  Rather than focusing their assertion of futility on the particular history of the four projects or the actions that defendants have taken to delay and obstruct each project, plaintiffs primarily assert that they have demonstrated futility through allegations and affidavits showing that certain Town Board and Town Planning Board members have participated in a conspiracy and engaged in corrupt acts to obstruct Roe as an individual because of his association with Hasidic Jews in the Town.

The FAC alleges that the defendants participated in a conspiracy to stop or impede Roe's development projects that involved, inter alia, hiring an assistant clerk to gather documents regarding Roe's past and current projects (e.g., FAC ¶¶ 20-32), and alleges that the Town's animus is demonstrated by the allegations it made in the Lamm action that Roe and others participated in a racketeering enterprise to commit fraud and other unlawful conduct against the Town (FAC ¶¶ 18-19).  The FAC also alleges that defendant Starobin made a stray remark during an August 2014 site visit to Burlingham Woods to the effect that Roe had placed the Town Planning Board "in a terrible position" by associating with Shalom Lamm and that the "politics" of the situation required the Town Planning Board to be particularly cautious in reviewing any projects proposed by Roe.  (FAC ¶ 56.) Additionally, and as relevant only to the jurisdictional ripeness issue, plaintiffs

have also submitted unsworn statements by former Town Board member Russell Wood (Smith Decl., Ex. 1, ECF No. 38-1), former Town Board member Robert Justus (Smith Decl., Ex. 2, ECF No. 38-2), and former assistant Town clerk Nicole Peleschuck (Smith Decl., Ex. 5, ECF No. 38-5), none of which establish that the Town Board or Town Planning Board harbor so strong an animus against Roe that any land use application he submits would inevitably be rejected.[10]  Wood and Justus state only that they heard other Town Board and Town Planning Board members say that they wanted to find ways (and believed they had) to stop certain of Roe's development projects, and that Nicole Peleschuck was ostensibly hired to aid in billing but spent most of her time reviewing Roe's past projects.  In her statement, Peleschuck states that the Town Planning Board's attorney directed her to pull files for Roe's past projects and that certain Town Planning Board members met to review the files, and that the Town was generating excessive bills to Roe out of escrow.  Peleschuck also states that Linda Franck, the Town Planning Board's secretary, told her that she was being asked to pull Roe's files because he was disliked because of his association with the Hasidim involved in the Chestnut Ridge project.  Finally, Roe himself submitted a sworn affidavit explaining that he has had 25 years of real estate development experience in the Town and that his treatment in regards to these recent projects has been different than that which he received in the past.  (Smith Decl., Ex. 4, ECF No. 38-4.)

---

[10] Plaintiffs have also submitted an unsworn statement by John Piazza, who served as Chairman of the Town Planning Board from 1993 to 2010.  (Smith Decl., Ex. 3, ECF No. 38-3.)  Piazza's statement does not provide any information regarding defendants' alleged animus.

Although the defendants' hostility to Roe and his projects is relevant to whether plaintiffs are able to show that their land use applications would inevitably be rejected, futility does not exist merely because the defendants are hostile to the plaintiffs' proposal.  Bloomingburg, 111 F. Supp. 3d at 479; see also BT Holdings, LLC v. Vill. of Chester, No. 15-CV-1986 (CS), 2016 WL 796866, at *7 (S.D.N.Y. Feb. 23, 2016) (collecting cases); Kowalczyk v. Barbarite, No. 08-CV-6992 (ER), 2012 WL 4490733, at *9 (S.D.N.Y. Sept. 25, 2012) ("Hostility alone, while perhaps unjustifiable, does not make certain that a zoning variance would be opposed or rejected."), aff'd, 594 F. App'x 690 (2d Cir. 2014) (summary order).  Moreover, "conclusory assertions that defendants acted with malicious intent and bad faith in processing plaintiff's application in order to delay and obstruct" are insufficient to establish futility.  Country View Estates @ Ridge LLC v. Town of Brookhaven, 452 F. Supp. 2d 142, 154 (E.D.N.Y. 2006) (collecting cases).  Here, as detailed above, plaintiffs rely on generalized allegations of hostility and stray remarks that, in large part, are conclusory or grounded in hearsay, and in any event largely do not support the broad conspiracy theory that plaintiffs argue demonstrates that his land use proposals will inevitably be rejected.  Such allegations are not themselves sufficient to meet plaintiffs' burden to show that any further compliance with the Town Board's or Town Planning Board's processes will be futile, as plaintiffs' allegations and the unsworn statements they have submitted in opposition to defendants' motion do not make certain that defendants will not give full consideration to any proposal.  Courts have rejected parties' invocations of the

futility exception where the allegations of hostility were at least as robust as those present here.  E.g., Homefront Org., Inc. v. Motz, 570 F. Supp. 2d 398, 408 (E.D.N.Y. 2008) (collecting cases); Dix, 2002 WL 31175251, at *8; Goldfine, 80 F. Supp. 2d at 161.  Having found plaintiffs' generalized allegations regarding defendants' alleged animus to be insufficient to establish futility, the Court next explains why plaintiffs' allegations regarding the history and current status of each of the four development projects do not meet plaintiffs' burden.

With respect to Burlingham Woods, after receiving necessary approvals from the Town Board and the Town Planning Board in 2011 and 2012, the FAC alleges that in January 2014 Roe submitted a proposal to construct a gas station and convenience store of approximately 2,000 square feet on a 3.9 acre parcel of the approximately 41-acre lot.  Plaintiffs allege that, after requesting various further submissions from Roe, the Town Planning Board reached a tie vote on a SEQRA Negative Declaration in November 2014.  Roe subsequently submitted a revised proposal in March 2015 and alleges that the Town Planning Board's secretary told Roe that he needed to contribute more money to the Board's escrow fund.  At least based on the allegations in the FAC, Roe refused to contribute more to the escrow fund until November 2015, when his attorney inquired as to why the project was not moving forward.  In December 2015, Roe tendered a check for the $974.76 amount that he was told was due, and was subsequently advised that another sum of $3,750 would have to be paid before the project could be considered.  Plaintiffs have refused to pay this additional sum, and argue that it would be futile to do so

27

because the Town Planning Board's request is unreasonable and it would in any event be met with a further demand for Roe to take additional unnecessary action.

Even accepting the facts alleged in the FAC as true, plaintiffs have not come close to meeting their burden to establish futility with respect to Burlingham Woods.  The only condition at this juncture holding up plaintiffs' application is of their own making; namely, their refusal to provide additional funds to the Town's escrow account to cover professional fees.  See Sheri Torah, Inc. v. Vill. of S. Blooming Grove, No. 10 Civ. 3762(LAP), 2013 WL 1454953, at *7 (S.D.N.Y. Mar. 28, 2013) (finding land use claims unripe where the plaintiff refused to provide the municipality with requested information that the plaintiff argued was frivolously sought).  A significant chunk of the delay in the project was plaintiffs' refusal to pay any additional escrow funds between March 2015 and November 2015; on the facts alleged, the Town Planning Board's second request for an additional sum of $3,750 does not establish that any further efforts to comply would be futile or pointless. The alleged obstacles to the project, and the requests made by the Town Planning Board, are as yet a far cry from presenting facts that other courts have found sufficient to invoke the futility exception; the history and status of Burlingham Woods much more closely resembles cases in which courts have found further compliance to not be futile.  E.g., Motz, 570 F. Supp. 2d at 409.  Even if the Town Planning Board's failure to approve a SEQRA Negative Declaration may be considered a rejection of one meaningful application, "often courts have required more than one rejected application to invoke the futility exception."  Goldfine, 80 F.

Supp. 2d at 160; see also Southview Associates, Ltd. v. Bongartz, 980 F.2d 84, 98 (2d Cir. 1992) (stating that a rejection of one development proposal has been found insufficient to invoke futility exception). Although precedent has not established a specific threshold beyond which excessive delay presumptively reaches futility, courts have stated that the delay must be "considerable." Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454 n.5 (9th Cir. 1987). Whatever extent of excessive postponement constitutes "considerable" delay, it cannot mean that the standard is met any time that a municipal body makes multiple rounds of requests over a period of a couple years for additional studies and escrow funds to cover professional fees.

With respect to Reinhardt Farms, plaintiffs allege that they first encountered obstruction and delay when, in March 2015, the Town Attorney sent a letter to the DEC—the entity responsible for approving the modification of Reinhardt Farms' mining permit—that reneged on prior approvals and permits (and deemed a conditional final approval for phase I of the subdivision to be expired) in a manner allegedly without precedent in the Town. In April 2015, the Town directed Reinhardt Farms to cease all mining operations and related work, and subsequently rezoned the area including and around Reinhardt Farms to require larger minimum lot sizes that would preclude implementation of the development proposal for which plaintiffs previously received conditional final approval. Plaintiffs do not allege that they have applied for renewed subdivision approval or that they have been

rejected—or that they have even reapplied—for renewal of the mining permit since receiving the March 2015 and April 2015 letters.

It is plainly apparent that the facts and circumstances pertaining to Reinhardt Farms do not meet the high standard for futility.  Absent from plaintiffs' allegations is any indication that further applications or efforts at compliance would be futile, as plaintiffs have not even demonstrated that they have sought and been denied a variance from the new zoning regulations or that the Town Planning Board has taken a definitive position on whether plaintiffs will be able to renew the mining permit.  To the extent that plaintiffs seek to show futility based on the Town Attorney's position stated in his March 2015 letter, this is insufficient because that letter reflects a legal argument and not a statement of how the Town Planning Board itself would consider any new application by plaintiffs.  545 Halsey Lane Properties, LLC v. Town of Southampton, No. 14-cv-800 (ADS)(AYS), 2015 WL 2213320, at *7 (E.D.N.Y. May 8, 2015), reconsideration denied, 2015 WL 3824050 (E.D.N.Y. June 19, 2015).  The Court observes, as well, that plaintiffs' own allegations demonstrate that the DEC, which is not alleged to have any animus towards plaintiffs, has been at least as responsible for delays in the project due to plaintiffs' failure to complete the agreed upon reclamation of the mining site.

Pantelop Road is a 12-lot subdivision set on approximately 30 acres that in August 2013 received conditional final approval from the Town Planning Board.[11]

---

[11] Plaintiffs first sought leave to add claims relating to Pantelop Road when they submitted the proposed First Amended Complaint on February 29, 2016.  The Court has no indication whether there have been any further developments or changes with respect to Pantelop Road or any of the other properties at issue since that date.  Even assuming that the Town has taken no further action

The conditions for final approval were the finalization of drainage easements and meeting the Town engineer's comments on the proposal—two conditions that plaintiffs do not allege were fulfilled as of plaintiffs' motion to amend the complaint on February 29, 2016.  The FAC does allege that Roe's engineer submitted a report regarding the proposed drainage district in July 2014, and submitted a supplemental report in December 2015 that addressed verbal comments made by the engineer for the Town Board.  Plaintiffs allege that waiting for a final decision from the Town Board and/or the Town Planning Board is futile because—at least as of February 2016—they have not received any response to the December 2015 supplemental report.

Even if one assumes that plaintiffs have yet to receive a response as of June 2016, only six months have passed since Roe's engineer submitted the requested supplemental report.  While plaintiffs contend that the delay of approval has been unnecessarily protracted, the reasonableness of this period must be compared to the approximately year and a half period that it took for plaintiffs' engineer to respond to the Town engineer's comments.  There is, furthermore, nothing specific to Pantelop Road in the FAC or the other materials that plaintiffs submitted in opposition to defendants' motion to dismiss suggesting that the Town Board or Town Planning Board have any particular hostility to that project.  These circumstances are plainly insufficient to show that the Town Board has dug in its heels or that disapproval is inevitable such that plaintiffs may be excused from the

on any of these projects as of the date of this Opinion & Order, that would not alter the Court's conclusion that plaintiffs have failed to establish futility.

final decision requirement.  <u>Dougherty</u>, 282 F.3d at 89; <u>see also</u> <u>Dean v. Town of
Hempstead</u>, No. 14-cv-04951 (JG) (SMG), 2016 WL 660884, at *20 (E.D.N.Y. Feb.
18, 2016) (collecting cases).

Lastly, as the Court previously noted, Freeman Properties is the only project
that defendants do not directly assert is not yet ripe for review.  As the Court has
noted above, however, ripeness is a jurisdictional question and therefore may
appropriately be considered by the Court <u>sua sponte</u>; the Court must undertake
that inquiry here because plaintiffs have not identified any adverse final decision by
the Town Planning Board or Town Board that they seek to challenge.  Rather,
plaintiffs (who, again, bear the burden of affirmatively showing the existence of
subject matter jurisdiction) essentially contend that, like the other development
projects in this case, waiting for action from defendants would be futile given
defendants' animus and unwarranted delays to date.  Plaintiffs allege that, despite
making inquiries to defendant Hermann and the Town Planning Board's secretary,
they have been waiting since October 2013 for the Town Board's attorney to draft
and prepare a bond in the amount of $184,300 for public improvements for the
project.  Plaintiffs further allege that defendant Hermann told another Town Board
member that he won't allow Freeman Properties to be placed on the Town Board's
agenda, and they also allege that there has never been another instance in the
Town of officials refusing to provide a developer who has received final subdivision
approval with a draft agreement to allow the developer to post a bond.

Although further delay or obstruction by the Town or the Town Board's attorney in providing a bond document (or at least explaining why that will not be forthcoming) or precluding Roe from being heard on the status of Freeman Properties could provide a sufficient ground for finding that waiting for action from the Town would be futile, the allegations—at least as currently pled in the FAC— are insufficient to show that such a point has yet been reached.

First, with respect to the alleged animus against the project, plaintiffs rely solely on a hearsay statement that defendant Hermann made to another Town Board member that provides no indication that the Town will refuse to provide the documents necessary to allow plaintiffs to post the required bond.  Moreover, as stated above, the FAC does not allege that Hermann has the authority to determine whether an item can be kept off of the Town Board's agenda, nor does it allege whether Freeman Properties even needs to be placed on the Town Board's agenda to secure the bond or to otherwise finalize the project.  Absent such allegations, it is unclear how Hermann's statement has any bearing on plaintiffs' actual ability to secure the bond documents.

As to the length of the alleged delay in providing the bond agreement, the Court agrees that a delay of more than two years appears to be excessive and without seeming justification.  That does not mean, however, that further inquiries or other efforts to obtain a bond agreement that would allow the project to go forward are futile.  Until this stage of the project, plaintiffs have not alleged that they received any opposition or obstruction from the Town.  Plaintiffs allege only

that Roe made numerous inquiries through May 2014 to individuals that included Hermann and the Town Planning Board's secretary.  The FAC is devoid of a description of efforts that Roe undertook subsequent to that date, or whether Roe has tried any other avenues (or whether any other avenues exist) to secure the bond that will allow Roe to finalize the project.  In short, plaintiffs have not overcome the reasonable inference that the issue has simply become stale as a result of inaction on both sides, and they have not shown the possibility that other avenues exist that would allow them to complete the project.  Under the circumstances alleged here, plaintiffs have not met their high burden to show futility.  Dougherty, 282 F.3d at 89; Dean, 2016 WL 660884, at *20.  Therefore, the Court finds that plaintiffs' claims relating to Freeman Properties are similarly not yet ripe for review based on the allegations in the FAC.[12]

In sum, because plaintiffs have not met the high bar of showing that awaiting a final decision from the Town Board or the Town Planning Board as to any of the four land use projects at issue would be futile, plaintiffs' claims—as alleged in either the operative complaint or the proposed First Amended Complaint—are not

---

[12] Even if the Court determined that it had jurisdiction to consider plaintiffs' claims relating to Freeman Properties on the merits, the Court has serious doubts that plaintiffs' allegations for this project plausibly allege a substantive due process or equal protection claim under either federal or state law.  See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 58 (2d Cir. 2010) (stating that a plaintiff alleging a class of one equal protection claim must allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (requiring a plaintiff alleging a substantive due process claim for wrongful denial of a land use permit to show that the defendant's action was so outrageously arbitrary as to be a gross abuse of governmental authority).  The Court observes that, if it were to conclude that plaintiffs' claims relating to Freeman Properties were not futile, the Court believes that it would be likely to grant defendants' motion as to those claims on the merits.  If that were to occur, plaintiffs' claims would be dismissed with prejudice, in contrast to the dismissal without prejudice that results from resolution on ripeness grounds.

ripe for review at this time.  To the extent that plaintiffs suffer further delay, obstruction and/or hostility with respect to any of these projects, they may seek to bring a new action asserting any appropriate claims at that time.

IV.     CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED on the ground that plaintiffs' claims are not ripe for review; plaintiffs' motion for leave to file an amended complaint is DENIED as futile.  Accordingly, this action is dismissed without prejudice.

The Clerk of Court is directed to close the motions at ECF Nos. 29 and 35, and to terminate this action.

SO ORDERED.

Dated:       New York, New York
             June 9, 2016

_____
KATHERINE B. FORREST
United States District Judge